**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **NORMA BROWN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Civil Action No. 5:19-00196** |
| | ) | |
| **PATRICK MORRISEY,** | ) | |
| **West Virginia Attorney General,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Respondent's "Motion to Dismiss and for Judgment on the Pleadings" (Document No. 67), filed on November 20, 2023. Petitioner, by counsel, filed her Response on December 20, 2023. (Document No. 69.) On December 27, 2023, Respondent filed his Reply. (Document No. 70.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's "Motion to Dismiss and for Judgment on the Pleadings" (Document No. 67).

## PROCEDURE AND FACTS

1.    **Case No. 13-F-52:**

Following a two-day jury trial, Petitioner was convicted in the Circuit Court of Greenbrier County on October 24, 2013, of one count of Extortion. State v. Griffin , Case No. 13-F-52 (Greenbrier Co. Jan. 29, 2014); (Civil Action No. 5:17-03111, Document No. 24-1.) On November 4, 2013, Petitioner, by counsel, Eric M. Francis, filed a Motion for New Trial and a Motion for a Stay of Execution of her sentence pending resolution of the Motion for New Trial and appeal. (Id., Document Nos. 24-2 and 24-3.) On November 25, 2013, Petitioner, by counsel, filed her Notice of Appeal. (Id., Document No. 24-6.) By Order entered on January 29, 2014, the

Circuit Court denied Petitioner's Motion for New Trial, deferred sentencing pending Petitioner's presentence diagnostic and classification evaluation pursuant to W. Va. Code § 62-12-7a, and granted Petitioner's Motion for Stay of Execution of Sentence until such time that Petitioner's direct appeal was concluded before the Supreme Court of Appeals of West Virginia ("SCAWV"). (Id., Document No. 24-4.)

On February 10, 2014, Petitioner, by counsel, filed in the SCAWV a Motion for Leave to Docket Appeal. (Id., Document No. 24-5.) On March 21, 2015, Petitioner, by counsel, filed in the Circuit Court a Motion for New Trial based upon a claim that an unqualified juror (Juror Overstreet) was improperly empaneled. (Id., Document No. 24-9, pp. 2 – 3.) By letter dated May 27, 2014, Circuit Judge Joseph C. Pomponio, Jr., notified the Clerk of the SCAWV that a Motion for New Trial had been filed in the underlying criminal action arguing the issue of juror disqualification. (Id., Document No. 24-11, pp. 3 – 4.) Circuit Judge Pomponio further stated that he had already granted a new trial in a separate case in which Juror Overstreet had served as a juror. (Id.) On June 3, 2014, the SCAWV issued a "Notice of Intent to Dismiss" noting that it had received notice from the Circuit Court that Petitioner's motion for a new trial had been granted. (Id., Document No. 24-7, p. 2 and Document No. 24-11, p. 3 - 4.) On June 25, 2014, Petitioner, by counsel, filed a Motion to Dismiss based upon counsel's belief that Petitioner would be granted a new trial based on the disqualification of juror. (Id., p. 3.) By Order entered the same day, the SCAWV granted Petitioner's Motion and dismissed her appeal. (Id.) Subsequently, Circuit Judge Pomponio retired without entering an Order granting Petitioner a new trial based on the disqualified juror issue. (Id.) On November 24, 2014, the State filed a Response in opposition of Petitioner's Motion for New Trial based upon the improper juror

issue. (Id., Document No. 24-9.) On December 4, 2014, Petitioner, by counsel, filed a Reply to the State's Response. (Id., Document No. 24-10.) On December 8, 2014, Circuit Judge Robert Richardson conducted a full hearing on the juror issue. (Id., Document No. 24-11.) By Order entered on January 7, 2015, Circuit Judge Richardson denied Petitioner's Motion for a New Trial. (Id.)

On January 14, 2015, Petitioner, by counsel, filed a Motion for Stay of Sentence stating her intention to file a motion for a writ of mandamus challenging the Circuit Court's Order denying Petitioner's Motion for New Trial. (Id., Document No. 24-12.) On January 20, 2015, Petitioner, by counsel, filed in the Circuit Court a "Writ of Mandamus/Notice of Intent to Appeal." (Document No. 24-13.) On January 22, 2015, Petitioner, by counsel, filed a Petition for Writ of Mandamus with the SCAWV. (Id., Document No. 24-14.) The Circuit Court denied Petitioner's Motion for a Stay of Sentence on January 30, 2015, and directed Petitioner to report to Lakin Correctional Center for the completion of her presentence diagnostic and classification evaluation. (Id., Document No. 24-15.) On the same day, Mr. Francis filed a "Motion to be Removed as Counsel" for Petitioner. (Id., Document No. 24-16.) On February 17, 2015, the State filed its "Summary Response to Petitioner's Writ of Mandamus/Notice of Intent to Appeal." (Id., Document No. 24-17.) On March 11, 2015, the SCAWV refused Petitioner's request for a writ of mandamus with leave for Petitioner to file a renewed notice of appeal that includes all appealable issues in the underlying criminal action. (Id., Document No. 24-18.) On April 7, 2015, Circuit Judge Richardson entered an Order Substituting Ryan H. Keesee as counsel for Petitioner. (Document No. 24-19.)

On May 22, 2015, Petitioner, by counsel, filed in the Circuit Court a "Renewed Motion

for New Trial." (Id., Document No. 24-20.) Following the completion of the diagnostic and classification evaluation, the Circuit Court conducted Petitioner's sentencing hearing on May 26, 2015. (Id., Document No. 24-21.) The Circuit Court first denied Petitioner's Renewed Motion for New Trial. (Id.) The Circuit Court then sentenced Petitioner to serve one (1) to five (5) years in the penitentiary and ordered Petitioner to return the extorted property to the victim as restitution. (Id.) The Circuit Court suspended Petitioner's term of incarceration and directed that Petitioner serve the remainder of her sentence on home confinement. (Id.) Finally, the Circuit Court took Petitioner's oral Motion to Stay Execution of the Sentence under advisement pending the filing of a written Motion and Response. (Id.)

On June 17, 2015, Petitioner, by counsel, filed a "Motion for Stay of Execution of Sentence." (Id., Document No. 24-22.) On July 14, 2015, the Circuit Court conducted a hearing and granted Petitioner's "Motion for a Stay of Execution of Sentence." (Id., Document No. 24-24.) On July 21, 2015, Petitioner, by counsel, filed her Notice of Appeal. (Id., Document No. 24-23.) The SCAWV entered its Scheduling Order on July 29, 2015. (Id., Document No. 24-26, pp. 2 – 4.) On September 29, 2015, Petitioner, by counsel, filed a Motion for Extension of Scheduling Deadlines. (Id., p. 5.) In support, counsel stated that he just became aware that he had not requested transcripts for all pretrial hearings. (Id., p. 15.) By Order entered on October 5, 2015, the SCAWV granted Petitioner's Motion and directed Petitioner to file an Amended Notice of Appeal. (Id., p. 5.) On October 30, 2015, Petitioner, by counsel, filed her Amended Notice of Appeal. (Id., Document No. 24-25.) Counsel, however, filed an Amended Notice of Appeal that was identical to the original notice of appeal, which again neglected to request transcripts for all pretrial hearings. (Id., Document No. 24-26, p. 15 – 16.) By Order entered on

4

November 10, 2015, the SCAWV entered another Amended Scheduling Order. (Id., Document No. 24-26, pp. 6 – 8.) On January 26, 2016, Petitioner, by counsel, filed her second Motion for Extension of Scheduling Deadlines. (Id., p. 9.) In support, counsel stated that he had been informed by the court reporter that all requested transcripts had been previously provided to either him or Petitioner's prior counsel. (Id., p. 16.) By Order entered on February 2, 2016, the SCAWV granted Petitioner's Motion and entered an Amended Scheduling Order. (Id., pp. 9 – 10.) On April 25, 2016, Petitioner, by counsel, filed her third Motion for Extension of Scheduling Deadlines. (Id., p. 11 - 12.) In support, counsel acknowledged that he now had all transcripts, but he needed additional time due to several scheduled trials and to conduct further research. (Id., p. 16.) By Order entered on April 26, 2016, the SCAWV granted Petitioner's Motion and entered an Amended Scheduling Order. (Id.) The SCAWV noted that this would be the Court's final granting of an extension of time. (Id.) On June 24, 2016, Petitioner, by counsel, filed her fourth Motion for Extension of Scheduling Deadlines. (Id., p. 13 - 14.) In the Motion, counsel requested a sixty-day extension of time to perfect the appeal. (Id., p. 16.) By Order entered on July 13, 2016, the SCAWV granted in part Petitioner's Motion by requiring Petitioner's appeal to be perfected by July 25, 2016. (Id.)

On July 25, 2016, Petitioner, by counsel, filed Petitioner's Brief and Appendix. (Id.) On July 28, 2016, the SCAWV entered a "Notice of Intent to Sanction and Rule to Show Cause" concerning Petitioner's counsel's failure to perfect the appeal. (Document No. 24-26, pp. 15 - 18.) The Court noted that even though counsel had filed Petitioner's Brief and an Appendix, neither complied with the Rules of Appellate Procedure. (Id.) Specifically, the Court concluded that the appeal has not been perfected because "[t]he brief consists only of a compilation of

assignments of error and appears to be a draft." (Id.) The SCAWV, therefore, directed counsel to properly perfect the appeal within ten days or show cause why he should not be held in contempt of Court. (Id.) On August 18, 2016, Petitioner, by counsel, filed Petitioner's Brief asserting the following assignments of error:

1.   West Virginia Code § 61-2-3 criminalizing extortion is unconstitutional on its face.

2.   The trial court erred in refusing to instruct the jury as to the meaning of criminal intent to commit extortion.

3.   The trial court erred in refusing to grant the appellant a new trial based on improper paneling and an unqualified juror.

4.   Ineffective assistance of trial counsel.

5.   The trial court failed to declare a mistrial upon being informed of prosecutorial misconduct.

6.   The trial court erred in refusing to dismiss the case pursuant to violation of the "three term rule," W. Va. Code § 62-3-21 (1959).

7.   The trial court was in plain error in its response to a question from the jury during its deliberations.

8.   The State's evidence as presented at the trial court was insufficient to convict the appellant.

9.   The Court erred in suppressing the testimony of Ray Propps, as a communication between testifying witness, Jack Griffin, and his pastor under W.Va. Code § 57-3-9.

10.   Cumulative error.

(Id., Document No. 24-27.) The State filed its "Response Brief" on November 18, 2016. (Id., Document No. 24-28.) Petitioner, by counsel, filed her "Reply Brief" on December 8, 2016. (Id., Document No. 24-29.) On April 28, 2017, the SCAWV affirmed Petitioner's conviction and sentence. (Id., Document No. 24-30, pp. 2 - 10.); State v. Norma G., 2017 WL 1535074 (W.Va.

6

April 28, 2017). The SCAWV issued its mandate on May 31, 2017. (Civil Action No. 5:17-03111, Document No. 24-30, p. 11.) On June 12, 2017, the Circuit Court vacated its order staying the execution of Petitioner's sentence. (Id., Document No. 13-1.) Specifically, the Circuit Court ordered that Petitioner begin serving her term of home confinement on June 15, 2017, and to make restitution to the victim by June 30, 2017. (Id.)

**2.    First Section 2254 Petition:**

On June 1, 2017, Petitioner, acting *pro se*, filed her first Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody initiating Civil Action No. 5:17-03111. (Id., Document Nos. 2 and 3.) In her Petition, Petitioner argued that pursuant to Section 2254(b)(1)(B)(ii) circumstances exist that render the State's *habeas corpus* process ineffective to protect her rights under the law. (Id., Document No. 2, pp. 1 – 3.) Although Petitioner indicated that proceedings are ongoing in Greenbrier County Circuit Court, Petitioner complained that she has "lost all faith in the judicial system and the Circuit Court of Greenbrier County." (Id., p. 2.) Petitioner explained that she has "lost all faith in the judicial system and the Circuit Court of Greenbrier County" because the Court allowed and/or condone "violations of the law to secure a conviction at all costs." (Id.) Petitioner explained that the State Court denied her Motion for a New Trial "based on witness intimidation perpetrated by the state against her witnesses, a disqualified member of the jury pool, the judge communicating with a deadlocked jury via the passing of a note that was not seen by the petitioner or her counsel prior to the passing the note to the jury, violation of the three terms of court rule, and withholding of exculpatory evidence by the prosecutor and arresting officer from the grand jury." (Id., pp. 2 – 3.) Thus, Petitioner concluded that extraordinary circumstances existed because any attempt to obtain *habeas* relief

in State court would be futile.[1] (Id., p. 3.) In the alternative, Petitioner requested that her Petition be "held in abeyance until her current state court pleadings have been fully exhausted." (Id.) As grounds for *habeas* relief, Petitioner asserted the following:

1.    West Virginia Code § 61-2-3 criminalizing extortion is unconstitutional on its face.

2.    The State's intentional withholding of exculpatory evidence from the grand jury tainted a true bill.

3.    Improper communication between prosecutor and a witness for the Petitioner.

4.    Improper instructions to the jury.

5.    Ineffective assistance of counsel.

6.    Prosecutorial misconduct.

7.    Constitutional errors in evidentiary rulings.

8.    Denial of right to a speedy trial.

9.    Conflict of interest in court staff during the trial.

10.   The arresting officer perjured himself repeatedly and misrepresented facts to the Court.

11.   Constitutional errors in the ruling by the West Virginia Supreme Court of Appeals.

12.   Ineffective assistance of appellant counsel.

(Id., pp. 5 – 21.) Finally, Petitioner asserted that the above "cumulative errors, the state's interference with witnesses and the state's entire case being circumstantial has prevented her from having a fair trial, due process, and equal protection under the law." (Id., pp. 21 – 22.)

---

[1] In her form Petition, Petitioner stated that she "believes that state remedies are moot due to state actors and the court proceedings are so egregious as to not give the Petitioner due process and ineffective to protect her rights." (Civil Action No. 5:17-03111, Document No. 3, p. 7.)

8

By Order entered June 2, 2017, the undersigned denied as moot Petitioner's Application to Proceed Without Prepayment of Fees or Costs[2] and directed Respondent to file a Response to Petitioner's Petition. (Id., Document No. 5.) On June 14, 2017, Petitioner filed a "Motion to Amend Petition for Writ of Habeas Corpus." (Id., Document No. 10.) In her Motion, Petitioner requested permission to supplement her Petition to include additional factual allegations that occurred since the filing of her original Petition. (Id.) Petitioner included the supplemental allegations with her Motion to Amend. (Id.) By Order entered on June 15, 2017, the undersigned granted Petitioner's Motion to Amend and directed Respondents to file an Answer. (Id., Document No. 11.)

On June 19, 2017, Petitioner filed a "Motion to Stay Under 28 U.S.C. § 2251." (Id., Document No. 13.) In her Motion, Petitioner requested that this Court "stay the execution of sentencing pending the outcome of" the above *habeas* action. (Id.) In support of her Motion, Petitioner stated she filed a Motion to Stay Execution of Sentencing in the Circuit Court of Greenbrier County on June 8, 2017. (Id.) Petitioner, however, stated that on June 12, 2017, the Circuit Court vacated the previous stay and ordered that "the property be signed back over in its entirety to the Petitioner's ex-husband, and the alleged victim, by June 30, 2017, and that Petitioner report to home incarceration by June 15, 2017." (Id.) Petitioner complained that the Circuit Court failed to conduct a hearing on her Motion to Stay even though "West Virginia Code § 62-7-1 allows for the state judge to stay the proceedings and at the very least hold a hearing on the petitioner's motion." (Id.) Next, Petitioner argued "the property in question is a marital issue and the proper venue on the decision of the property division is a family court matter and not a criminal court matter." (Id.) Finally, Petitioner alleged that requiring her "to

---

[2]  On the same day as filing her Application to Proceed Without Prepayment of Fees, Petitioner also paid the $5.00

follow the State court order and sign the property back over to her ex-husband will in fact cause irreparable harm and a violation of her constitutional rights." (Id.) As Exhibits, Petitioner attached the following: (1) A copy of an Order from the Circuit Court of Greenbrier County vacating the stay of execution of sentence (Document No. 13-1.); and (2) A copy of a transcript of a conversation between Petitioner and her ex-husband (Id., Document No. 14.). On June 26, 2017, Respondents filed their Response in Opposition arguing that "Petitioner's reliance on premature federal collateral *habeas* review to stay the State court's sentencing order and prevent the return of extorted property is not justified under 28 U.S.C. § 2251." (Id., Document No. 17.)

On June 27, 2017, Petitioner filed a "Motion for Preliminary Injunction or Temporary Restraining Order Under Rule 65" and Memorandum in Support. (Id., Document Nos. 18 and 19.) Specifically, Petitioner requested that this Court grant Petitioner a preliminary injunction or temporary restraining order "against the Circuit Court of Greenbrier County, West Virginia, until such time that this Court can rule on Petitioner's motion for stay or the *habeas corpus* petition." (Id.) On June 30, 2017, Petitioner filed her Reply to Respondents' Response in Opposition. (Id., Document No. 20.) By Order entered on July 5, 2017, the undersigned denied Petitioner's "Motion to Stay Under 28 U.S.C. § 2251." (Id., Document No. 22.)

On July 13, 2017, Respondents filed their Answer, Motion to Dismiss, and Memorandum in Support thereof with Exhibits. (Id., Document Nos. 23 - 25.) Specifically, Respondents argued that Petitioner's Petition be dismissed without prejudice for failure to exhaust existing State court remedies as required under 28 U.S.C. § 2254(b)(1)(A). (Id.) Respondents noted that Petitioner's Petition is partly unexhausted and she only recently initiated State *habeas* proceedings. (Id.)

As Exhibits, Respondents attached the following: (1) A copy of Petitioner's "Verdict

---

filing fee. (Civil Action No. 5:17-03111, Document Nos. 1 and 2.)

Order" as filed in the Circuit Court in Criminal Action No. 13-F-52 (Id., Document No. 24-1.); (2) A copy of Petitioner's "Motion for New Trial" as filed in the Circuit Court on November 4, 2014 (Id., Document No. 24-2.); (3) A copy of Petitioner's "Motion for Stay of Execution" as filed in the Circuit Court on January 8, 2014 (Id., Document No. 24-3.); (4) A copy of Petitioner's "Sentencing Order" as filed in the Circuit Court on January 29, 2014 (Id., Document No. 24-4.); (5) A copy of Petitioner's "Motion for Leave to Docket Appeal" as filed in the SCAWV on February 10, 2014 (Id., Document No. 24-5.); (6) A copy of Petitioner's "Notice of Appeal" as filed with the SCAWV on November 25, 2013 (Id., Document No. 24-6.); (7) A copy of the SCAWV's "Notice of Intent to Dismiss" as filed on June 3, 2014 (Id., Document No. 24-7.); (8) A copy of Petitioner's "Memorandum of Law in Support of Juror Disqualification Issue" as filed in the Circuit Court on March 26, 2014 (Id., Document No. 24-8.); (9) A copy of the "State's Response to Defendant's Motion for New Trial Due to Juror Disqualification Issue" as filed in the Circuit Court on November 24, 2014 (Id., Document No. 24-9.); (10) A copy of Petitioner's "Reply to State's Response to Defendant's Motion for New Trial Due to Juror Disqualification Issue" as filed in the Circuit Court on December 5, 2014 (Id., Document No. 24-10.); (11) A copy of the Circuit Court's "Order Denying Motion for New Trial" as filed on January 7, 2015 (Id., Document No. 24-11.); (12) A copy of Petitioner's "Motion for Stay of Sentence" as filed in the Circuit Court on January 14, 2015 (Id., Document No. 24-12.); (13) A copy of Petitioner's "Writ of Mandamus/Notice of Intent to Appeal" as filed in the Circuit Court on January 20, 2015 (Id., Document No. 24-13.); (14) A copy of Petitioner's "Writ of Mandamus" as filed with the SCAWV on January 22, 2015 (Id., Document No. 24-14.); (15) A copy of the Circuit Court's "Order Denying Motion for Stay" as filed on January 30, 2015 (Id.,

Document No. 24-15.); (16) A copy of Mr. Francis' "Motion to be Removed as Counsel" as filed in the Circuit Court on January 30, 2015 (Id., Document No. 24-16.); (17) A copy of the State's "Summary Response to Petitioner's Writ of Mandamus/Notice of Appeal" as filed in the SCAWV on February 17, 2015 (Id., Document No. 24-17.); (18) A copy of the SCAWV's Order refusing Petitioner's writ of mandamus and giving leave for Petitioner to file a renewed notice of appeal (Id., Document No. 24-18.); (19) A copy of the Circuit Court's "Order Substituting Counsel" as filed on April 7, 2015 (Id., Document No. 24-19.); (20) A copy of Petitioner's "Renewed Motion for New Trial" as filed in the Circuit Court on May 22, 2015 (Id., Document No. 24-20.); (21) A copy of the Circuit Court's "Sentencing Order and Order Denying Defendant's Renewed Motion for New Trial" as filed on June 18, 2015 (Id., Document No. 24-21.); (22) A copy of Petitioner's "Motion for Stay of Execution of Sentence" as filed in the Circuit Court on July 17, 2015 (Id., Document No. 24-22.); (23) A copy of Petitioner's "Notice of Appeal" as filed in the SCAWV on July 21, 2015 (Id., Document No. 24-23.); (24) A copy of the Circuit Court's "Order Granting Defendant's Motion to Stay Execution of Sentence" as filed on July 24, 2015 (Id., Document No. 24-24.); (25) A copy of Petitioner's Amended "Notice of Appeal" as filed in the SCAWV on October 30, 2015 (Id., Document No. 24-25.); (26) A copy the SCAWV's "Scheduling Order" as entered on July 29, 2015 (Id., Document No. 24-26, pp. 2 – 4.); (27) A copy of the SCAWV's "Amended Scheduling Order" as entered on October 5, 2015 (Id., p. 5.); (28) A copy of the SCAWV's "Amended Scheduling Order" as entered on November 10, 2015 (Id., pp. 6 – 8.); (29) A copy of the SCAWV's "Amended Scheduling Order" as entered on February 2, 2016 (Id., pp. 9 – 10.); (30) A copy of the SCAWV's "Amended Scheduling Order" as entered on April 26, 2016 (Id., pp. 11 – 12.); (31) A copy of the SCAWV's "Amended

12

Scheduling Order" as entered on July 13, 2016 (Id., pp. 13 – 14.); (32) A copy of the SCAWV's

"Notice of Intent to Sanction and Rule to Show Cause" as entered on July 28, 2016 (Id., pp. 15 –

18.); (33) A copy of the SCAWV's "Amended Scheduling Order" as entered on September 29,

2016 (Id., p. 19.); (34) A copy of Petitioner's Brief on Appeal as filed in the SCAWV on August

18, 2016 (Id., Document No. 24-27.); (35) A copy of the State's Brief as filed in the SCAWV on

November 18, 2016 (Id., Document No. 24-28.); (36) A copy of Petitioner's Reply Brief as filed

in the SCAWV on December 8, 2016 (Id., Document No. 24-29.); (37) A copy of the SCAWV's

"Memorandum Decision" affirming Petitioner's conviction and sentence as filed on April 28,

2017 (Id., Document No. 24-30, pp. 2 - 10.); (38) A copy of the SCAWV's Mandate as issued on

May 31, 2017 (Id., p. 11.); and (39) A copy of the Docket Sheet for Petitioner's State *habeas*

proceedings (Case No. 17-C-139) in the Circuit Court of Greenbrier County (Document No.

24-31.).

On July 14, 2017, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975),

was issued to Petitioner, advising her of the right to file a response to Respondent's Motion to

Dismiss. (Id., Document No. 26.) On October 2, 2017, Petitioner filed her Response in

Opposition. (Id., Document No. 36.) Petitioner acknowledged that her claims were "partly

unexhausted" and she filed a mixed petition. (Id., pp. 1 and 32.) Petitioner, however, argued that

circumstances exist pursuant Section 2254(b)(1)(B)(ii) that render the State's *habeas corpus*

process ineffective to protect her rights. (Id.) Petitioner first contended that exhaustion would be

futile. (Id., pp. 4 – 5.) Petitioner additionally complained of delay by the State court in her

pending *habeas* proceedings. (Id.) Finally, Petitioner argued the merits of each of her grounds for

*habeas* relief that were asserted, and denied, on direct appeal. (Id., pp. 6 – 32.) Petitioner further

concluded that her unexhausted claims have merit. (Id., p. 32.)

As Exhibits, Petitioner filed the following: (1) A copy of pertinent pages from the trial transcripts (Id., Document No. 36-1, pp. 1 – 7;); (2) A copy of the transcripts from the hearing on Petitioner's Motion for a New Trial (Id., pp. 8 – 27.); (3) A copy of a letter from the Florida Highway Safety and Motor Vehicles dated April 10, 2012 (Id., Document No. 36-2, p. 1.); (4) A copy of transcripts from a pretrial motions hearing conducted on October 15, 2013 (Id., pp. 2 – 15.); (5) A copy of Jack Griffin's trial testimony (Id., Document No. 36-2, pp. 16 – 35.); (6) A copy of telephone records (Id., Document No. 36-3, pp. 1 – 23.); (7) A copy of Roger Baker's trial testimony (Id., pp. 24 – 27 and Document No. 36-7, pp. 1 - 33.); (8) A copy of an Order from the Circuit Court of Pocahontas County affirming Roger Baker's conviction of battery in the Magistrate Court, the docket sheet, and the Criminal Complaint (Id., Document No. 36-3, p. 28 - 33.); (9) A copy a letter from the Assistant Prosecutor Cook addressed to defense counsel concerning a plea offer to Petitioner (Id. p. 33.); (10) A copy of Steve Hunter's trial testimony (Id., Document No. 36-4, pp. 1 – 6.); (11) A copy a letter from the Assistant Prosecutor Cook addressed to defense counsel regarding discovery (Id., pp. 7 – 8.); (12) A copy of Prosecutor Cook's closing arguments (Id., pp. 9 – 15.); (13) A copy of the sentencing transcripts (Id., pp. 16 – 24.); (14) A copy of an Affidavit from former defense counsel, Ryan Keesee (Id., p. 25.); (15) A copy of Petitioner's Indictment for Extortion as filed in the Circuit Court of Greenbrier County on February 8, 2012 (Case No. 12-F-45) (Id., pp. 26 – 27.); (16) A copy of an Order dismissing without prejudice Case No. 12-F-45 due to a conflict of interest by the prosecutor who presented the case to the grand jury (Id., p. 28.); (17) A copy of Petitioner's Indictment for Extortion as filed in the Circuit Court of Greenbrier County in June 2012 (Case No. 12-F-123) (Id., pp. 29 –

30.); (18) A copy of an "Agreed Order of Continuance" as filed in the Circuit Court in Case No. 12-F-123 (Id., p. 31 - 32.); (19) A copy of the Circuit Court's "Order Granting Defendant's Motion to Quash Indictment" based upon a determination that a member of the grand jury had personal knowledge of Petitioner resulting in a prejudicial and biased grand jury (Id., pp. 33 – 35.); (20) A copy of Petitioner's Amended Indictment as filed in Case No. 13-F-52 (Id., p. 36.); (21) A copy of Petitioner's "Motion to Dismiss" as filed in Case No. 13-F-52 (Id., pp. 37 – 39.); (22) A copy of the Circuit Court's "Order Denying Defendant's Pre-Trial Motions" (Id., pp. 40 – 42.); (23) A copy of transcripts from the pretrial motions hearing and on Petitioner's motion to dismiss (Id., Document No. 36-5, pp. 1 – 28.); (24) A copy of the State's "Response to Defendant's Motion to Dismiss" (Id., pp. 29 – 33.); (25) A copy of a jury question as presented to the Circuit Court (Id., p. 34.); (26) A copy of Petitioner's Affidavit (Id., pp. 35 – 39.); (27) A copy of the trial transcripts concerning arguments made as to whether a conversation between Mr. Griffin and his pastor were privileged (Id., pp. 40 – 45.); (28) A copy of the State's "Jury Instruction No. 1 Extortion (by Accusation of an Offense)" (Id., pp. 45 – 47.); (29) A copy of an Affidavit from Ray Lee Propps, pastor of Living Waters Family Worship Center (Id., p. 48.); (30) A copy of a CD of conversations between Petitioner and Mr. Griffin dated August 14, 2011 (Id., Document No. 36-6, p. 1.); (31) A copy of the transcript of the audio records (Id., pp. 2 – 17.); (32) A copy of Joanna Willis trial testimony (Id., Document No. 36-8, pp. 1 - 9.); and (33) A copy of Barbara Stone's trial testimony (Id., pp. 10 – 17.).

By Proposed Findings and Recommendation ("PF&R") entered on December 21, 2017, the undersigned recommended that Petitioner's Section 2254 Petition be dismissed for failure to exhaust.[3] (Id., Document No. 38.) By Memorandum Opinion and Order entered January 16,

---

[3] At the time of the filing of her first Federal *habeas* Petition, Petitioner had not yet filed a State *habeas* petition and

2018, United States District Judge Irene C. Berger adopted the undersigned's recommendation and dismissed Petitioner Section 2254 Petition. (Id., Document Nos. 39 and 40.)

3.    **First State *Habeas* Petition:**

On July 11, 2017, Petitioner, acting *pro se*, filed her Petition for Writ of *Habeas Corpus* in the Circuit Court of Greenbrier County. (Id., Document No. 24-31.); Griffin v. State, Case No. 17-C-139 (Cir. Ct. Greenbrier Co.). Petitioner filed an Amended Petition on July 14, 2017. (Civil Action No. 5:19-0196, Document No. 2, pp. 25 - 26.) By Order filed on September 29, 2017, the Circuit Court appointed counsel to represent Petitioner and granted counsel 90 days to file an Amended *Habeas* Petition on behalf of Petitioner. (Id.) On May 18, 2018, the Circuit Court conducted a hearing on Petitioner's Motion to Disqualify the Prosecutor. (Id., pp. 27 – 32.) By Order entered on June 1, 2018, the Circuit Court granted Petitioner's Motion and appointed a special prosecutor. (Id., pp. 33 – 35.) On May 28, 2019, the Circuit Court dismissed Petitioner's State *habeas* petition as moot based upon the completion of Petitioner's sentence. (Civil Action No. 5:19-0196, Document No. 17.)

4.    **Second Section 2254 Petition:**

On March 20, 2019, Petitioner, acting *pro se*, filed her second Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody initiating the above action.[4] (Id., Document No. 2.) In her Petition, Petitioner argued that pursuant to Section 2254(b)(1)(B)(ii) circumstances exist that render the State's *habeas* corpus process ineffective to protect her rights

---

the mandate on her direct appeal had just been issued. Petitioner then filed a State *habeas* petition and complained that the passing of less than three months from the filing date, without action by the State court, constituted inordinate delay.

[4] Because Petitioner was acting *pro se*, the documents which she filed were held to a less stringent standard than if they were prepared by a lawyer, and therefore they were construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

under the law. (Id., Document No. 2, pp. 2 – 3.) Petitioner first explained that she filed motions

to disqualify the prosecutor from the State *habeas* proceedings and a "Writ of Prohibition"

against Judge Richardson. (Id.) Then Petitioner complained that at the time of the filing of her

instant Section 2254 Petition, the State had not yet filed a response to her State *habeas* petition.

(Id.) Petitioner, therefore, argues that she should be excused from exhausting her state remedies.

(Id.) As grounds for *habeas* relief, Petitioner asserted the following:

I.      West Virginia Code § 61-2-13 criminalizing extortion is unconstitutional
        on its face;

II.     The State's intentional withholding of exculpatory evidence from the
        grand jury tainted a true bill;

III.    Improper communication between the prosecutor and a witness for the
        Petitioner;

IV.     Improper instructions to the jury;

V.      Ineffective assistance of counsel;

VI.     Prosecutorial misconduct;

VII.    Constitutional error in evidentiary rulings;

VIII.   Denial of right to a speedy trial;

IX.     Conflict of interest in court staff during the trial;

X.      The arresting officer perjured himself repeatedly and misrepresented the
        facts to the Court;

XI.     Constitutional errors in the ruling by the West Virginia Supreme Court of
        Appeals; and

XII.    Ineffective assistance of appellant counsel.

(Id., pp. 6 – 24.) As Exhibits, Petitioner attached the following: (1) A copy of the Circuit Court

of Greenbrier County's Order granting Petitioner's Petition to Proceed *in forma pauperis* and

appointing *habeas* counsel (Id., pp. 25 – 26.); (2) A copy of transcripts from a hearing conducted on May 18, 2018, in the Circuit Court in Petitioner's *habeas* proceedings (Id., pp. 27 – 32.); (3) A copy of the Circuit Court's "Order of Appointment of Special Prosecutor" dated June 1, 2018 (Id., pp. 33 – 34.); and (4) A copy of the "Appointment of Special Prosecutor" (Id., p. 35.).

By Order entered March 22, 2019, the undersigned directed Respondent to file a Response to Petitioner's Petition. (Id., Document No. 5.) The undersigned directed "Respondent should specifically address Petitioner's claim that she should be excused from the exhaustion requirement pursuant to Section 2254(b)(1)(B)." (Id.) On April 26, 2019, Petitioner filed her "Brief in Support of Exhaustion." (Id., Document No. 9.) Petitioner stated that she was recently paroled on April 17, 2019, by the Circuit Court of Greenbrier County as to her underlying criminal sentence. (Id.) Petitioner, therefore, argued that her parole "effectively makes exhaustion moot and complete per the federal court rules" and "Petitioner has no further remedies in the State Court process." (Id.) As an Exhibit, Petitioner attached a copy of her "Home Incarceration Release Order" dated April 17, 2019. (Id., p. 4.)

On June 28, 2019, following the granting of an extension of time, Respondent filed his Answer. (Id., Document No. 17.) Respondent stated that Petitioner's Petition contains both exhausted and unexhausted claims. (Id.) Specifically, Respondent stated that Grounds Two, Five, Ten, and Twelve are unexhausted claims. (Id.) Respondent acknowledged that Petitioner's circumstances present "an atypical procedural posture" where Petitioner has now been released from custody prior to the resolution of her State *habeas* proceedings.[5] (Id.) Thus, Respondent concluded that Petitioner "does not have a viable means of addressing those unexhausted grounds in a *habeas* context due to her release from state custody." (Id.) Respondent, however,

---

[5] Petitioner's State *habeas* petition was dismissed approximately two months *after* she filed her second Section

18

did not discuss whether a petition for writ of *coram nobis* was an available state remedy. (<u>Id.</u>) On July 19, 2019, Petitioner filed her "Response to Respondent's Answer." (<u>Id.</u>, Document No. 21.)

By Order entered July 18, 2019, the undersigned directed the parties to address the issue of whether a petition for writ of *coram nobis* is an available state remedy. (<u>Id.</u>, Document No. 20.) On August 30, 2019, Respondent filed his Response requesting dismissal of Petitioner's Section 2254 Petition for failure to exhaust. (<u>Id.</u>, Document No. 22.) Specifically, Respondent argued that Petitioner "would have an available means of relief through *coram nobis*, thereby requiring her to exhaust her unexhausted claims in a state court petition for writ of *coram nobis* before proceeding upon her 2254 Petition." (<u>Id.</u>) On October 16, 2019, Petitioner filed her Response in Opposition. (<u>Id.</u>, Document No. 25.) By PF&R entered on November 21, 2019, the undersigned recommended that Respondent's Response requesting dismissal of Petitioner's Section 2254 Petition for failure to exhaust be denied and that Petitioner be granted a stay so that she could pursue her State court remedies for her unexhausted claims. (<u>Id.</u>, Document No. 27.) By Memorandum Opinion and Order entered on December 31, 2019, United States District Judge Frank W. Volk adopted the undersigned's recommendation and directed Petitioner to return to federal court within 30 days after she has exhausted her State court remedies and seek a lift of the stay. (<u>Id.</u>, Document No. 29.)

On January 21, 2020, Petitioner filed a "Motion to Lift Stay and Amend Petition for Habeas Corpus." (<u>Id.</u>, Document No. 30.) Specifically, Petitioner informed the Court that her Motion for Writ of *Coram Nobis* had been denied by the State court. (<u>Id.</u>) By Order entered on January 27, 2020, District Judge Volk granted Petitioner's Motion to Lift Stay. (<u>Id.</u>, Document No. 31.) By Order entered on February 11, 2020, the undersigned granted Petitioner's Motion to

2254 Petition.

Amend Petition for Habeas Corpus. (Id., Document No. 35.) The undersigned notified Petitioner that her Amened Petition would supersede the original Petition (Document No. 2), and there must be one integrated document that will provide Respondent with notice of the claims. (Id.)

On March 6, 2020, Petitioner filed her Amended Section 2254 Petition and a Motion to Appoint Counsel. (Id., Document Nos. 36 and 37.) In her Amended Section 2254 Petition, Petitioner asserted the following grounds for relief:

1.    The alleged victim, arresting officer, and prosecuting attorney conspired to steal the alleged extorted property to benefit the arresting officer and alleged victim.

2.    West Virginia Code § 61-2-13 criminalizing extortion is unconstitutional on its face.

3.    The State's intentional withholding of exculpatory evidence from the grand jury tainted a true bill.

4.    Improper communication between the prosecutor and a witness for the Petitioner.

5.    Improper instructions to the jury.

6.    Ineffective assistance of counsel.
    (a)    Counsel for petitioner failed to secure an order after the presiding judge sent a letter to the WV Supreme Court regarding the juror that was not qualified to be in the jury pool, and WV Supreme Court sent out a notice to dismiss for a new trial.

    (b)    When the Prosecutor requested a hearing regarding the matter of the new trial, and objected to the new trial, Petitioner requested that her counsel subpoena the former presiding Judge, Joseph C. Pomponio, who had retired, to testify as to his intentions regarding his letter to the WV Supreme Court.

    (c)    Counsel for Petitioner failed to introduce impeachment evidence regarding the State's main witness although he had said evidence was in his possession and Petitioner asked him to use it.

    (d)    Counsel for Petitioner failed to object to the presiding Judge's decision not to allow a recorded conversation to be admitted as

20

impeachment evidence and remind the presiding Judge of his previous ruling regarding the allowance of said evidence during the pretrial hearing.

(e)     Counsel failed to introduce the expert witness for his testimony as to the validity of the recorded conversation.

(f)     Counsel failed to object to the presiding Judge leaving the bench after discussing the matter of the deadlock jury and not calling the jury back into the court room to instruct them in the presence of the Petitioner.

(g)     Counsel failed to develop or move the court as to the relevant testimony that was quashed under the clergy penance.

(h)     Counsel failed to object and waived the objection as to the presiding Judge not allowing the impeachment evidence in although at the pretrial the presiding Judge stated that the recording could be admitted as impeachment evidence.

(i)     Counsel failed to admit as evidence proof that the Petitioner had contacted Corp. Roger Baker via text messaging.

(j)     Counsel failed to secure and use impeachment evidence known to him regarding Corporal Roger D. Baker.

(k)     Counsel failed to correct the order regarding the original stay on the execution of sentence entered by the presiding Judge regarding all matters being stayed.

(l)     Counsel failed to develop the record as to the clergy witness and what the essence of his testimony would be.

(m)     Counsel had an ethical duty to report the actions of Ms. Cook intimidating a witness to the state bar and refused and Petitioner was discouraged from doing so on her own by her counsel stating that it would "look retaliatory."

7.     Prosecutorial misconduct.
(a)     Prosecutor repeatedly lied to the Court regarding evidence;

(b)     During trial when Petitioner's counsel attempted to use the recorded evidence as impeachment evidence against the State's witness, Mr. Griffin, Ms. Cook once again denied having knowledge of the recordings.

21

    (c)       She engaged in witness intimidation keeping one of the Petitioner's key witnesses from testifying.

    (d)       She assisted the attorney for the alleged victim to keep a clergy witness from testifying again keeping the Petitioner's witness from testifying by stating to the court that she believed and agreed with E. Lavoyd Morgan, Jr., counsel for Mr. Griffin, that the communication between Mr. Griffin and the pastor was privileged communication without even knowing the crux of the testimony presented.

    (e)       After the conversation between the Petitioner and Sheriff Jan Cahill, Ms. Cook contacted the Petitioner's counsel regarding going to sentence.

    (f)       New evidence has come to light after the sentencing in which Ms. Cook was fired from her position as Assistance Prosecutor for Monroe County due to abuse of power during an abuse and neglect case.

8.       Constitutional errors in evidentiary rulings.

    (a)       The presiding Judge, Joseph C. Pomponio, failed to call a mistrial after becoming aware and taking testimony as to the actions of the prosecutor, Ms. Kristen Cook, and arresting officer, Corp. Roger D. Baker regarding improper witness intimidation against the key witness of the Petitioner.

    (b)       The presiding Judge erred by not giving the jury an intent instruction.

    (c)       The presiding Judge ruled against a directed verdict when counsel moved the court regarding the second name on the deed of the property, one Logan Griffin, was not present nor did he testify.

    (d)       The presiding Judge erred in not allowing impeachment evidence at the time the witness to be impeached was on the stand.

    (e)       The presiding Judge erred in denying the Petitioner's motion by mount, to inform the jury of the misconduct by the prosecution.

    (f)       The presiding Judge erred on his ruling as to the admissibility of alleged statements made by the Petitioner to several people.

    (g)       Presiding Judge erred in denying Petitioner's Motion to Dismiss

pursuant to WV Code § 62-3-21 Three Terms of Court Rule in which he miscalculated the time for the three terms of court.

(h)    The presiding Judge erred on his interpretation of WV Code § 62-3-3 on the empaneling of the jury pool free from exception.

(i)    Presiding Judge erred in not granting Petitioner's Motion for a New Trial on the juror disqualification issue.

9.    Denial of right to a speedy trial.

10.    Conflict of interest in court staff during the trial.

11.    The arresting officer perjured himself repeatedly and misrepresented facts to the court.

12.    Constitutional errors in the ruling by the West Virginia Supreme Court of Appeals.
(a)    The West Virginia Supreme Court erred in not finding the statute unconstitutional on its face.

(b)    The West Virginia Supreme Court erred in not finding the Petitioner's right to a speedy trial was violated.

(c)    The West Virginia Supreme Court erred in not finding that a mistrial should have been called by the presiding judge on the Petitioner's motion due to witness intimidation by the prosecutor.

(d)    The West Virginia Supreme Court erred in not finding that an element of intent is required as a jury instruction.

13.    Ineffective assistance of appellant counsel.
(a)    Appellant counsel, Ryan Keesee, failed to develop the full record on appeal.

(Id., Document No. 37.) As Exhibits, Petitioner attached two CDs. (Id., Document Nos. 37-1 and 37-2.) By Order entered on March 9, 2020, the undersigned granted Petitioner's Motion to Appoint Counsel, appointed the Office of the Federal Public Defender to represent Petitioner, and directed that appointed counsel file an Amended Petition on behalf of Petitioner. (Id., Document No. 38.)

23

On June 29, 2020, following the granting of an extension of time, Petitioner, by First Assistant Federal Public Defender David R. Bungard and Assistant Federal Public Defender Jonathan D. Byrne, filed her Second Amended Section 2254 Petition, Memorandum in Support, and Exhibits. (Id., Document Nos. 44 – 47.) In addition to the grounds asserted in Petitioner's *pro se* Amended Section 2254 Petition (Document No. 37), Petitioner, by counsel, asserted the following grounds:

1.    [Petitioner] received ineffective assistance of counsel when, after she was initially charged in Case Number 12-F-143 in Greenbrier County, counsel failed to inform [Petitioner] of a written offer to resolve the case. That offer would have required [Petitioner] to transfer the property at issue back to Jack Griffin and in return the prosecution would have dropped any further prosecution of [Petitioner]. Had [Petitioner] been informed of this offer by counsel, she would have accepted it.

2.    [Petitioner] received ineffective assistance of counsel when, at trial, counsel failed to properly preserve, by testimony or proffer, the expected testimony of Kevin McMillion after it was learned that his attorney had been confronted by the prosecutor and police investigator the evening before McMillion was supposed to testify. Counsel's failure ensured that the record on appeal for review of any issue related to that incident was incomplete and prevented a thorough review of [Petitioner's] case on appeal.

3.    [Petitioner] received ineffective assistance of counsel when, at trial, counsel failed to call to testify two witnesses – Sue McMillion and Carol Brown – both of whom would have testified that Griffin had told them prior to any alleged extortion that he intended to transfer the property at issue to [Petitioner] for the benefit of her and her children. Such testimony would have bolstered [Petitioner's] own testimony and effectively impeached Griffin's.

4.    [Petitioner] received ineffective assistance of counsel when, at trial, counsel failed to properly preserve, by testimony or proffer, the expected testimony of Ray Propps, whose testimony was prevented by Griffin's invocation of the pastor/penitent privilege. Counsel's failure ensured that the record on appeal for review of any issue related to that incident was incomplete and prevented a thorough review of [Petitioner's] case on appeal. In addition, trial counsel failed to accurately inform the trial court of the law regarding the privilege, which did not support its invocation in

24

this matter.

(Id., Document No. 46.) As Exhibits, Petitioner attached the following: (1) A copy of the SCAWV's "Memorandum Decision" affirming Petitioner's conviction and sentence as filed on April 28, 2017 (Id., Document No. 45-1.); (2) A copy of the Petitioner's trial transcripts (Id., Document Nos. 45-2, 45-3, and 45-4.); (3) A copy of the transcripts of the audio recordings (Id., Document No. 45-5.); (4) A copy of the CD containing the audio recordings (Id., Document No. 45-6 and 47.); (5) A copy of the Plea Offer dated April 2, 2013 (Id., Document No. 45-7.); (6) A copy of the Affidavit of Ray Lee Propps, Pastor of Living Waters Family Worship Center (Id., Document No. 45-8.); (7) A copy of letter from the Florida Highway Patrol dated April 10, 2012 (Id., Document No. 45-9.); (8) A copy a letter from Attorney Eric Francis to Second Creek Technologies, LLC, dated September 24, 2012 (Id., Document No. 45-10.); and (9) A copy of AT&T cell phone records (Id., Document Nos. 45-11, 45-12, and 45-13.).

On August 28, 2020, Respondent, by counsel, filed his "Motion to Dismiss Without Prejudice or for Stay Due to Petitioner's Failure to Exhaust her State Remedies" and Memorandum in Support. (Id., Document Nos. 48 – 49.) Specifically, Respondent argued that Petitioner's Amended Section 2254 Petition (Document No. 37) and Second Amended Section 2254 Petition (Document No. 46) contained grounds that were not fully exhausted. (Id.) Respondent asserted that Grounds 1, 3, 6(b)-(m), 7(a)(b),(d),(e),(f), 8(c),(d),(e),(f),(h), 10, 11, and 13 of Petitioner's *pro se* Amended Petition (Document No. 37), and all additional grounds asserted in Petitioner's Second Amended Petition filed by counsel (Document No. 46), were not fully exhausted. (Id.) Therefore, Respondent argued that the Court should "dismiss this entire petition without prejudice." (Id.) In the alternative, Respondent requested that "this Court should

either stay this proceeding and hold it in abeyance while Petitioner exhausts her remedies or require Petitioner to abandon her unexhausted claims and order further briefing." (Id.)

As Exhibits, Respondent attached the following: (1) A copy of the Docket Sheet for <u>State v. Norma Brown Griffin</u>, Case No. 13-F-52 (<u>Id.</u>, Document No. 48-1); (2) A copy of the SCAWV's "Memorandum Decision" affirming Petitioner's conviction and sentence as filed on April 28, 2017 (<u>Id.</u>, Document No. 48-2.); (3) A copy of Petitioner's "Amended Petition for Writ of Habeas Corpus" and "Checklist of Grounds for Post-Conviction Habeas Corpus Relief" as filed in the Circuit Court of Greenbrier County on December 29, 2017, Civil Action No. 17-C-139 (<u>Id.</u>, Document No. 48-3.); (4) A copy of the "Dismissal Order" filed in Circuit Court of Greenbrier County on May 28, 2019, in Civil Action No. 17-C-139 (<u>Id.</u>, Document No. 48-4.); (5) A copy of the Docket Sheet for Norma B. Griffin v. State, Case No. 17-C-139 (<u>Id.</u>, Document No. 48-5.); (6) A copy of Petitioner's "Application for Writ of Error Coram Nobis and Motion for an Emergency Hearing" as filed in the Circuit Court of Greenbrier County on December 23, 2019, in Case No. 13-F-52 (<u>Id.</u>, Document No. 48-6.); and (7) A copy of the Circuit Court of Greenbrier County's Order denying Petitioner's "Application for Writ of Error Coram Nobis and Motion for an Emergency Hearing" entered on January 2, 2020 (<u>Id.</u>, Document No. 48-7.).

On September 22, 2020, Petitioner, by counsel, filed her Response. (<u>Id.</u>, Document No. 50.) Petitioner conceded that her Amended Petitions contain unexhausted claims and requested that the "Court enter an order staying this proceeding to allow [Petitioner] to return to state court and fully exhaust her remedies there." (<u>Id.</u>)

By PF&R entered on October 6, 2020, the undersigned recommended that Respondent's Response requesting dismissal of Petitioner's Section 2254 Petitions for failure to exhaust be

denied and that Petitioner be granted a stay so that she could pursue her State court remedies for her unexhausted claims. (Id., Document No. 51.) By Memorandum Opinion and Order entered on October 27, 2020, Judge Volk adopted the undersigned's recommendation and directed Petitioner to return to federal court within 30 days after she has exhausted her State court remedies and seek a lift of the stay. (Id., Document No. 52.)

On February 22, 2023, Petitioner, by counsel, filed a Notice of Completion of State Action. (Id., Document No. 55.) By Order entered on May 22, 2023, Judge Volk lifted the stay and reinstated the above case to the active docket. (Id., Document No. 57.) By Order entered on May 24, 2023, the undersigned directed Petitioner's counsel to file a Final Amended Petition containing all of Petitioner's claims.[6] (Id., Document No. 58.) The parties were advised that the "Final Amended Petition will supersede all prior Petitions." (Id.) Following the granting of an extension of time, Petitioner, by counsel, filed her Final Amended Petition and Memorandum in Support on September 6, 2023. (Id., Document Nos. 61 and 62.) As grounds of relief, Petitioner asserted as follows:

1.    The statute under which [Petitioner] was convicted, W. Va. Code § 61-2-13, is unconstitutional because it does not require the state to prove that the defendant acted with any specific element of intent.

2.    [Petitioner] received ineffective assistance of counsel at trial and on appeal.

    A.    Counsel was ineffective for failing to properly argue the issue of pastor/penitent privilege, leading the trial court to incorrectly conclude that the privilege applied in this case.

    B.    Counsel was ineffective for failing to call an already retained expert witness who could have testified that the recording introduced into evidence had not been altered.

---

[6] The undersigned noted that Petitioner's grounds for relief were contained to two documents (Document Nos. 37 and 46) and there should be one integrated document that provides Respondent with notice of the claims. (Document No. 58.)

C.    Counsel was ineffective for failing to make a full record for appeal by not including the recorded conversation between [Petitioner] and Griffin in the materials presented to the [SCAWV].

(Id., Document No. 62.) As Exhibits, Petitioner attaches the following: (1) A copy of the SCAWV's Memorandum Decision filed April 28, 2017, affirming Petitioner's conviction and sentence (Id., Document No. 63-1); (2) A copy of the transcripts of Petitioner's jury trial (Id., Document Nos. 63-2 and 63-3); (3) A copy of the "Transcription of the Audio Recording (Id., Document No. 63-4); (4) A copy of a CD containing the audio recording (Id., Document Nos. 63-5 and 64); (5) The Affidavit of Ray Lee Propps dated May 15, 2014 (Id., Document No. 63-6); (6) A copy of a letter from Attorney Eric Francis to the Second Creek Technologies, LLC, dated September 24, 2012 (Id., Document No. 63-7); (7) A copy of Petitioner's "Application for Writ of Error Coram Nobis and Motion for an Emergency Hearing" as filed in the Circuit Court of Greenbrier County on January 8, 2021 (Id., Document No. 63-8); (8) A copy of the Circuit Court's "Order Granting In Part and Denying In Part Respondent's Motion to Dismiss" as filed on August 16, 2021 (Id., Document No. 63-9); (9) A copy of the transcripts from the Circuit Court's hearing on Petitioner's Application for Writ of Error *Coram Nobis* as held on August 17 and 18, 2021 (Id., Document Nos. 63-10 and 63-11); and (10) A copy of the Circuit Court's "Order Denying Application for Writ of Error Coram Nobis" as filed on March 25, 2022 (Id., Document No. 63-12).

On November 20, 2023, Respondent filed his "Motion to Dismiss and for Judgment on the Pleadings" and Memorandum in Support. (Id., Document Nos. 67 and 68.) Petitioner filed her Response on December 20, 2023, and Respondent filed his Reply on December 27, 2023. (Id., Document Nos. 69 and 70.)

5.    **First Petition for Writ of *Coram Nobis*:**

On December 23, 2019, Petitioner filed her "Application for Writ of Error Coram Nobis and Motion for an Emergency Hearing" in the Circuit Court of Greenbrier County in Case No. 13-F-52. (Id., Document No. 48-6.) As grounds for relief, Petitioner argued as follows:

1.    New evidence has come to light regarding the alleged extorted property;

2.    The State's intentional withholding of exculpatory evidence from the grand jury tainted the true bill;

3.    Ineffective assistance counsel: Counsel for petitioner failed to secure an order after the presiding judge sent a letter to the West Virginia Supreme Court regarding the juror that was not qualified to be in the jury pool, and the West Virginia Supreme Court sent out a notice to dismiss for a new trial.

4.    The arresting officer perjured himself repeatedly and misrepresented the facts to the court.

5.    Ineffective assistance of appellate counsel.

(Id.) By Order entered on January 2, 2020, the Circuit Court denied Petitioner's "Application for Writ of Error Coram Nobis and Motion for an Emergency Hearing." (Id., Document No. 48-7.) The Circuit Court explained that Petitioner "apparently directed the Clerk of this Court to file the pleading in this criminal action, rather than instituting a separate proceeding," did not file a civil case information statement, or pay the applicable filing fee for instituting a new civil action. (Id.) Thus, the Circuit Court determined that "[b]ecause [Petitioner] has not taken the necessary steps to commence a new civil action with her Application for Writ of Error Coram Nobis, the Court must treat the same as a motion in this [criminal] proceeding." (Id.) The Circuit Court then determined that Petitioner's Application for Writ of Error Coram Nobis must be denied because *coram nobis* is no longer permitted in criminal cases. (Id.) The Circuit Court, however, notified

29

Petitioner that she "must commence a new proceeding, if she wishes to pursue relief from her criminal conviction through a writ of coram nobis." (Id.)

6.    **Second Petition for Writ of *Coram Nobis*:**

On January 8, 2021, Petitioner, acting *pro se*, filed her "Application for Writ of Error Coram Nobis and Motion for an Emergency Hearing" in the Circuit Court of Greenbrier County in Case No. 2021-P-8. (Id., Document No. 63-8.) As grounds for relief, Petitioner argued as follows:

1.    New evidence has come to light regarding the alleged extorted property;

2.    The State's intentional withholding of exculpatory evidence from the grand jury tainted the true bill;

3.    Ineffective assistance counsel:
   A.    Counsel for petitioner failed to secure an order after the presiding judge sent a letter to the West Virginia Supreme Court regarding the juror that was not qualified to be in the jury pool, and the West Virginia Supreme Court sent out a notice to dismiss for a new trial.

   B.    The Petitioner repeatedly told her counsel that there was not an order granting a new trial after he agreed to dismiss it against the Petitioner's wishes.

   C.    Counsel failed to show your petitioner accurate plea offer that had been presented. Had she been informed of the actual plea offer, she might have taken it.

   D.    Petitioner received ineffective assistance of counsel when, at trial, counsel failed to properly preserve, by testimony or proffer, the expected testimony of Kevin McMillion after it was learned that his attorney had been confronted by the prosecutor and police investigator the evening before McMillion was supposed to testify. Counsel's failure ensured that the record on appeal for review of any issue related to that incident was incomplete and prevented a thorough review of [Petitioner's] case on appeal.

   E.    Petitioner received ineffective assistance of counsel when,

30

at trial, counsel failed to call to testify two witnesses – Sue McMillion and Carol Brown – both of whom would have testified that Griffin had told them prior to any alleged extortion that he intended to transfer the property at issue to [Petitioner] for the benefit of her and her children. Such testimony would have bolstered [Petitioner's] own testimony and effectively impeached Griffin's.

F.     Petitioner received ineffective assistance of counsel when, at trial, counsel failed to properly preserve, by testimony or proffer, the expected testimony of Ray Propps, whose testimony was prevented by Griffin's invocation of the pastor/penitent privilege. Counsel's failure to ensure that the receive on appeal for review of any issue related to the incident was incomplete and prevented a thorough review of Petitioner's case on appeal. In additional, trial counsel failed to accurately inform the trial court of the law regarding the privilege, which did not support its invocation in this matter.

G.     Petitioner received ineffective assistance of counsel when he chose not to impeach both Griffin and Baker when he had impeachable material to present.

4.     The arresting officer, Corporal Roger D. Baker, perjured himself repeatedly and misrepresented the facts to the court.

5.     Ineffective assistance of appellate counsel. Appellant counsel failed to designate the entire record, more specifically the recorded conversation entered as exhibits at trial.

(Id.) Subsequently, the State filed a Motion to Dismiss for Failure to State a Claim Upon Which Relieve Can Be Granted and Motion for Summary Judgment. (Id., Document No. 63-9.) On August 12, 2021, the Circuit Court conducted a hearing concerning the foregoing Motion. (Id.) On August 16, 2021, the Circuit Court entered an "Order Granting In Part and Denying In Part Respondent's Motion to Dismiss." (Id.) Specifically, the Circuit Court granted the State's Motion concerning Petitioner's following claims: (1) Petitioner "is entitled to have her conviction set aside based upon the State of West Virginia's failure to present purportedly

31

exculpatory evidence to the grand jury;" (2) Ineffective assistance of counsel "based upon allegations that her counsel dismissed her appeal to the Supreme Court of Appeals of West Virginia prior to the entry of an order by this court granting her a new trial;" (3) Ineffective assistance of counsel "based upon allegations that her trial counsel failed to preserve, by testimony or proffer, the expected testimony of Kevin McMillion for purposes of appeal;" and (4) Ineffective assistance of counsel "based upon allegations that her trial counsel failed to preserve, by testimony or proffer, the expected testimony of Ray Propps for purposes of appeal, or upon allegations that trial counsel 'failed to accurately inform the trial court of the law' regarding the privilege asserted with regard to such testimony." (Id.) As to all remaining claims, the Circuit Court denied the State's Motion. (Id.) On August 17 – 18, 2021, the Circuit Court conducted an evidentiary hearing concerning Petitioner's Application for Writ of Error *Coram Nobis*. (Id., Document Nos. 63-10 and 63-11.) The Circuit Court heard testimony from the following: (1) J.M. Cahill, West Virginia State Police Superintendent and former Greenbrier County Sheriff; (2) Timber Lynn McMillion; (3) Kevin McMillion; (4) Virginia Lemons; (5) Justin St. Clair; (6) Roger Baker; (7) Sgt. H.F. Blevins, West Virginia State Police; (8) Kristin Cook; (9) Jack Griffin; (10) Eric M. Francis; (11) Brian Hamilton Keesee; and (12) Patrick James Kearnes. (Id.) On March 25, 2022, the Circuit Court entered its "Order Denying Application for Writ of Error Coram Nobis." (Id., Document No. 63-12.) Petitioner did not file an appeal.

## THE APPLICABLE STANDARD

In Section 2254 proceedings, the familiar standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to motions to dismiss. *See* Walker v. True, 399 F.3d 315, 319, n. 1. (4th

Cir. 2005); <u>also see</u> Rules Governing Section 2254 Cases in the United States District Courts,

Rule 12 (The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with

the *habeas* rules, may be applied to Section 2254 proceedings). A motion to dismiss a Section

2254 petition under Rule 12(b)(6) "tests the legal sufficiency of the petition, requiring the federal

habeas court to 'assume all facts pleaded by the § 2254 petitioner to be true." <u>Walker v. Kelly</u>, ,

139 (4th Cir. 2009)(<u>citing</u> <u>Wolfe v. Johnson</u>, 565 F.3d 140, 169 (4th Cir. 2009). The court,

however, is "not obliged to accept allegations that 'represent unwarranted inferences,

unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial

notice or by exhibit.'" <u>Massey v. Ojaniit</u>, 759 F.3d 343, 353 (4th Cir. 2014)(<u>quoting</u> <u>Blankenship</u>

<u>v. Manchin</u>, 471 F.3d 523, 529 (4th Cir. 2006). When assessing whether the Section 2254 petition

states a claim for relief, the court must consider "the face of the petition any attached exhibits."

<u>Wolfe</u>, 565 F.3d at 169 (internal quotations omitted). The court may also consider such exhibits

and matters of public record, such as documents from prior state court proceedings, in

conjunction with a Rule 12(b)(6) motion without having to convert the motion to one for

summary judgment. <u>Walker</u>, 589 F.3d at 139.

## <u>ANALYSIS</u>

**1.    Failure to Exhaust:**

In his Motion, Respondent requests that Petitioner's Section 2254 Petition be dismissed

for failure to exhaust available state remedies. (Civil Action No. 5:19-cv-0196, Document Nos.

67 and 68.) Respondent notes that Petitioner's claims of ineffective assistance of counsel are

unexhausted. (<u>Id.</u>, Document No. 68, pp. 7 – 11.) As to Petitioner's second claim of ineffective

assistance of counsel (Ground 2(B)), Respondent states that Petitioner did not raise this particular

ground in either her direct appeal or in her Application for Writ of Error *Coram Nobis*. (Id., pp. 8 – 9.) As to Petitioner's remaining claims of ineffective assistance of counsel (Ground 2(A) and 2(C)), Respondent argues that such are unexhausted because such were never presented to the SCAWV. (Id., pp. 9 – 10.) Although Respondent acknowledges that Petitioner raised claims of ineffective assistance of counsel in her Application for Writ of Error *Coram Nobis*, Respondent argues these claims were not exhausted because she did not appeal the Circuit Court's denial of the Application for Writ of Error *Coram Nobis* Petition to the SCAWV. (Id.) Thus, Respondent states that "[n]one of Petitioner's claims of ineffective assistance have been fairly presented to the [SCAWV], as required by the methods of exhaustion in the West Virginia State courts." (Id., p. 11.) Respondent asserts that the "only ground for relief that has been presented to the [SCAWV] is the challenge to the extortion statute" (Ground 1). (Id.) Therefore, Respondent argues that Petitioner's Final Amended Petition should be dismissed as a mixed petition or Petitioner should be required to abandon her unexhausted claims. (Id., p. 9 and 11.)

In Response, Petitioner "concedes" that her ineffective assistance of counsel claims (Ground 2(A), (B), and (C)) do "not meet the technical requirements of exhaustion in § 2254 proceedings, but urges this Court to not allow the technical shortcomings of a *pro se* litigant to prevent it from reviewing [Petitioner's] claims on the merits." (Id., Document No. 69, p. 2.) Citing Slack v. McDaniel, 529 U.S. 473, 487, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000), Petitioner argues that the "complete exhaustion rule is not to trap the unwary *pro se* prisoner." (Id.) First, Petitioner notes that "[t]hrough critical portions of her state proceedings seeking review of her conviction, [Petitioner] has been forced to proceed *pro se*." (Id.) Petitioner claims that had she not completed her sentence prior to the resolution of her pending State *habeas*

petition, she would have been "entitled to appointed counsel in that proceeding." (Id., p. 3.) Petitioner asserts that "[t]his Court should not punish [Petitioner] for completing her sentence in an admirable enough fashion that it terminated before the statutory maximum sentence was reached." (Id.) Second, Petitioner states that "[w]ith regard to trial counsel's decision not to call the expert witness who had reviewed the recording, that issue was alleged in [Petitioner's] amended *pro se* petition (Dkt. No. 37 at 13)." (Id.) Although Petitioner acknowledges "this issue was not one of the many instances of ineffective assistance of counsel raised in [Petitioner's] *coram nobis* motion, that appears to have been an oversight on the part of a *pro se* petitioner." (Id.) Petitioner argues that "[t]he State appears to have thought the issue had some life in the *coram nobis* proceeding, too, as it questioned the prosecutor in [Petitioner's] case about the recording, eliciting testimony that she 'definitely did not believe that record could be trusted.'" (Id.) Thus, Petitioner contends that "[i]f the question of whether an expert should have been called by the defense to rebut such concerns was not before the court, the State had no reason to ask those questions." (Id., p. 4.) Although Petitioner acknowledges that the State eventually objected to the line of questioning, "the issue was raised in the *coram nobis* hearing, partly by the State, [which] should be sufficient for this Court to proceed to review it on the merits." (Id.) Third, Petitioner acknowledges that she did not appeal the denial of her Application for Writ of Error *Coram Nobis* to the SCAWV. (Id.) Petitioner argues that she should be excused from filing such an appeal to the SCAWV due to her "*pro se* status and the complicated nature of appellate procedure in West Virginia." (Id.) Petitioner then proceeds to compare the procedures for filing an appeal with the Federal Court of Appeals to the procedures for filing a state appeal in West Virginia. (Id., pp. 4 – 5.) Petitioner argues that the "procedure in West Virginia is more

complicated." (Id., p. 5.) Petitioner further complains that while her "*coram nobis* proceeding was pending, the State of West Virginia created an Intermediate Court of Appeals." (Id.) Petitioner, however, acknowledges that the Immediate Court of Appeals' jurisdiction to review all final orders in civil cases only applied to final order entered after June 30, 2022.[7] (Id.) Therefore, Petitioner further complains that she would have been required to seek review from the SCAWV directly and that would have required "more than simply filing a one-page notice of appeal." (Id.) Specifically, Petitioners states she would have been required to file an Appendix containing "not only information about the parties involved and the judgment being appealed from, but also particular assignments of error and a transcript request form." (Id.) Petitioner alleges that "[f]or a *pro se* litigant such requirements can be overwhelming." (Id.) Since Petitioner "presented, or attempted to present, these issues to the state court via the *coram nobis* proceeding as best she could as a *pro se* litigant," Petitioner requests that this Court "conclude, given the relaxed standard related to *pro se* litigants, that these issues have been adequately exhausted and consider them on the merits." (Id.)

In Reply, Respondent first argues that the Court should rejected Petitioner's request that the Court "overlook her failure to exhaust all claims solely because she was self-represented in her coram nobis proceeding." (Id., Document No. 70, pp. 1 – 2.) Specifically, Respondent states that "[n]o law supports this novel approach to exhaustion, so the Court should not – indeed, cannot – reach the unexhausted claims on the merits." (Id., p. 2.) Respondent contends that "the fact remains that Petitioner has not presented any of her three grounds of ineffective assistance of counsel to the [SCAWV] and she failed to present the second ground – that counsel failed to call a retained expert witness – in her coram nobis petition." (Id.) Respondent argues that "*Slack* does

---

[7]  The Circuit Court entered its "Order Denying Application for Writ of Error Coram Nobis" on March 25, 2022.

not support overlooking this jurisdictional failing." (Id.) Respondent asserts that the Court should

reject Petitioner's request to ignore the statutory exhaustion requirement for three reasons." (Id.)

First, Respondent claims that Petitioner is not a "unwary" litigant because she is "well versed in

the 'technical requirements' of total exhaustion of her available state remedies based on her prior

proceedings before this Court. (Id., p. 3.) Citing Slack, Respondent argues "[o]nce the petitioner

is made aware of the exhaustion requirement, no reason exists for [her] not to exhaust all

potential clams before returning to federal court. The failure to comply with an order of the court

[directing the petitioner to return with only exhausted claims] is grounds for dismissal with

prejudice.'" (Id.) Second, Respondent contends that "Petitioner was not entirely uncounseled

below." (Id.) Respondent explains that even though Petitioner was not represented by counsel

throughout the *coram nobis* proceedings in State court, Petitioner was appointed counsel in the

instant proceeding on March 9, 2020. (Id.) Thus, Respondent asserts that Petitioner "had the

benefit of having counsel who could further explain to her the exhaustion process prior to filing

her coram nobis petition as a self-represented litigant and throughout those proceedings." (Id.)

Respondent further argues that Petitioner was "not 'forced to proceed *pro se*" nor was she

"entitled to appointed counsel" in *habeas* proceedings in State court. (Id., pp. 3 – 4.) Respondent

explains that a "West Virginia court with jurisdiction over *habeas* proceedings 'may deny a

petition for a writ of *habeas corpus* without a hearing and without appointing counsel . . . if the

petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's

satisfaction that the petitioner is entitled to no relief." (Id., p. 4.) Respondent concludes that

"[t]hrough the magistrate judge and her appointed counsel, Petitioner was advised of the

exhaustion process and knew that all claims had to be presented to the SCAWV to be totally

---

(Id., Document No. 63-12.)

exhausted." (<u>Id.</u>) Third, Respondent argues that the alleged "complicated nature of the appellate procedure in West Virginia" is not a sufficient reason to excuse Petitioner's failure to exhaust." (<u>Id.</u>) Respondent claims that neither of the statutory exceptions for a petitioner to proceed on an unexhausted claim apply in the instant case. (<u>Id.</u>) Respondent explains that Petitioner pursued her State remedies through *coram nobis* and "[s]he had the opportunity to appeal the denial of relief to the SCAWV but chose not to." (<u>Id.</u>) Respondent argues that "Petitioner does not explain what makes West Virginia's ordinary appellate processes – which Petitioner is familiar with from her direct appeal, anyway – so burdensome or unduly complicated to 'render futile any effort to obtain relief.'" (<u>Id.</u>) Citing W. Va. Code § 53-4A-1, Respondent further notes that the "West Virginia Intermediate Court of Appeal does not have jurisdiction over the appeal of an extraordinary remedy such as habeas corpus or coram nobis." (<u>Id.</u>, pp. 4 – 5.) Respondent finally argues that even assuming West Virginia's appellate process was complicated, such does not "excuse federal law's exhaustion requirement." (<u>Id.</u>, p. 5.) Respondent concludes that although a federal court "must treat the first mixed petition 'as though it had not been filed,' *id.* at 488, *Slack* doesn't support the idea that *pro se* petitioners can bypass exhaustion altogether." (<u>Id.</u>) Therefore, Respondent requests that Petitioner's Final Amended Petition be dismissed for failure to exhaust. (<u>Id.</u>)

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA], effective April 24, 1996, provides that state prisoners must exhaust available state remedies prior to filing a § 2254 petition in federal court. 28 U.S.C. § 2254(b)(1)(A); <u>see also</u>, <u>McDaniel v. Holland</u>, 631 F.Supp. 1544, 1545 (S.D. W.Va. 1986)("A federal court will not entertain a state prisoner's petition for a writ of habeas corpus unless the

prisoner has first exhausted available state judicial remedies."). Section 2254(b)(1)'s exhaustion requirement can be satisfied in either one of two ways: (1) the Petitioner can fairly present all claims in state court, or (2) the Petitioner's claims will be deemed exhausted if no state remedies are currently available. See Gray v. Netherland, 518 U.S. 152, 161, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996). Fair presentation requires the Petitioner to (1) present the same claims (2) to all appropriate state courts. See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds*, United States v. Barnette, 644 F.3d 192 (4th Cir. 2011). Presentation of the same claim "contemplates that 'both the operative facts and the 'controlling legal principles' 'must be presented to the state court." Id. (quoting Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992) (quoting Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)). Although it is unnecessary to cite "book and verse on the federal constitution," "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." See Picard, 404 U.S. at 278, 92 S.Ct. at 514; Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)(internal citations omitted); Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000). The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Matthews, supra, 105 F.3d at 911. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 886, 130 L.Ed.2d 865 (1995); see also Baldwin v.

39

<u>Reese</u>, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004)(stating that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'"). Petitioner must also provide the state court with the facts supporting the claimed constitutional violation and "explain how those alleged events establish a violation of his constitutional rights." <u>Mallory v. Smith</u>, 27 F.3d 991, 994 (4th Cir. 1994). The requirement of presentation of the same claim to all appropriate state courts is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). This requirement is satisfied by presentation to the state's highest court on either direct or collateral review. <u>Id.</u> at 844, 119 S.Ct. at 1732. In West Virginia, prisoners may exhaust their available State court remedies by the following: (1) stating cognizable federal constitutional claims in a direct appeal to the West Virginia Supreme Court of Appeals; (2) stating cognizable federal constitutional claims in a petition for a writ of *habeas corpus* in a State circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the West Virginia Supreme Court of Appeals; or (3) filing a petition for writ of *habeas* corpus under the West Virginia Supreme Court's original jurisdiction and receiving a dismissal with prejudice.[8] <u>Moore v. Kirby</u>, 879 F.Supp. 592, 593 (S.D.W.Va. 1995); <u>McDaniel v. Holland</u>, 631 F.Supp. 1544,

---

[8]   An original jurisdiction petition that is denied without an indication that the denial is with prejudice following a determination on the merits will not exhaust the petitioner's state court remedies. *See Moore*, 879 F.Supp. at 593; *McDaniel*, 631 F.Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-09 (4th Cir. 1990)(*abrogated on other grounds, Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997)).

1545-46 (S.D.W.Va. 1986).

In the unusual circumstance where a petitioner is no longer "in custody" for the purposes of pursuing a *habeas* petition, a writ of error *coram nobis* is an available State court remedy. In State v. Hutton, 235 W.Va. 724, 776 S.Ed.2d 621 (2015), the West Virginia Supreme Court recognized that the common law writ of error *coram nobis* is available in criminal cases to challenge a defendant's conviction. State v. Hutton, 235 W.Va. 724, 776 S.Ed.2d 621 (2015). The West Virginia Supreme Court determined that a writ of *coram nobis* may be used to challenge both factual and legal error. Id., 235 W.Va. at 736-37, 776 S.E.2d at 633-34. The Court then held that "a claim of legal error may be brought in a petition for a writ of error *coram nobis* only in extraordinary circumstances and if the petitioner shows that (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) there exists a substantial adverse consequence from the conviction; and (4) the error presents a denial of a fundamental constitutional right." Id., 235 W.Va. at 742, 776 S.E.2d at 639; also see State v. Hutton, 239 W.Va. 853, 806 S.E.2d 777 (2017)(applying the four part test); State v. Keefer, 2016 WL 3369564 (W.Va. June 17, 2016)(petitioner filed a petition for writ of *coram nobis* where his state *habeas* petition was not concluded prior the discharge of his sentence); Cline v. Mirandy, 234 W.Va. 427, 435, 765 S.Ed.2d 583, 591 (2014)(stating that under certain circumstances a released prisoner would still have a remedy under the writ of *coram nobis*); State ex rel. Richey v. Hill, 216 W.Va. 155, 162, n. 10, 603 S.E.2d 177, 184, n. 10 (2004)(noting that *coram nobis* may be available in a post-conviction context when a petitioner is not incarcerated).

Generally, a federal district court may not review a Section 2254 petition unless there has been "total exhaustion" of the presented issues. Rose v. Lundy, 455 U.S. 509, 522, 102 S.Ct.

1198, 71 L.Ed.2d 379 (1982); also see Preiser v. Rodriguez, 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)(When a petitioner fails to exhaust his state court remedies, a federal *habeas* petition should be dismissed.) When a petitioner presents a mixed petition under § 2254, that is a petition containing claims that are both exhausted and unexhausted, the District Court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in State Court; or (3) allow the petitioner to remove the unexhausted claim claims and proceed with the exhausted claims. Rhines v. Weber, 544 U.S. 269, 275-77, 125 S.Ct. 1528, 161 L.E.2d 440 (2005). "[N]otwithstanding the failure of an applicant to exhaust the remedies available in the courts of the state," a district court may deny the unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2); also see White v. Keller, 2013 WL 791008, * 5 (M.D.N.C. March 4, 2013). To be excused from the exhaustion requirement, Petitioner must establish that "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The foregoing statutory exceptions apply "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981); also see Farmer v. Circuit Court of Md. for Balt. City., 31 F.3d 219, 223 (4th Cir. 1994)("There is . . . authority for treating sufficiently diligent, though unavailing, efforts to exhaust as, effectively, exhaustion, and for excusing efforts sufficiently shown to be futile in the face of state dilatoriness or recalcitrance."). A finding of futility sufficient to excuse exhaustion may be found where either something in the record of the petitioner's case clearly indicates that the state court where petitioner otherwise could seek relief will not consider the petitioner's claim, or the law of the

42

state clearly precludes any further review of the petitioner's claim. Knight v. State of West Virginia, 981 F.2d 1251 (4th Cir. 1992)("[W]hen it is clear that the state court will refuse to entertain a habeas petitioner's claim, the prisoner need not exhaust his state remedies, because the prisoner is not required to exhaust a claim when seeking relief in the state courts would clearly be futile.")(citing Teague v. Lane, 489 U.S. 288 (1989)). Additionally, "[s]tate remedies may be rendered ineffective by inordinate delay or inaction in state proceedings." Ward v. Freeman, 46 F.3d 1129 (4th Cir. 1995)(unpublished table decision).

It is undisputed that Petitioner failed to fully exhaust her ineffective assistance of counsel claims (Ground 2(A), (B), and (C)) as asserted in her Final Amended Petition. There is no allegation or indication that Petitioner should be excused from the exhaustion requirement because "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." As this Court already determined, a writ of error *coram nobis* was an available State remedy for Petitioner. Given the unusual nature of Petitioner's procedural history where she was released from custody prior to resolution of her State *habeas* petition, Petitioner could establish extraordinary circumstances for the filing of a petition for writ of *coram nobis*. See Ex parte Hawk, 321 U.S. 114, 116, 64 S.Ct. 448, 450, 88 L.Ed. 572 (1994)(finding that where a petitioner has an available state remedy by way of a writ of error of *coram nobis*, the petitioner may not seek federal relief until this state remedy is exhausted); Minor v. Lucas, 697 F.2d 697, 698 (5th Cir. 1983)(finding that the exhaustion principle required petitioner to first present his claims to state courts in a writ of error *coram nobis* before the federal court could entertain his federal *habeas* petition); U.S. ex rel. Wilkins v. Banmiller, 325 F.2d 514, 517 (3rd Cir. 1963)(finding that petitioner had an available

state remedy by way of a writ of error *coram nobis*); U.S. ex rel. Randolph v. Dowd, 259 F.2d 761, 763 (7th Cir. 1958)(finding the district court properly dismissed petitioner's *habeas* petition where petitioner failed to exhaust state procedural remedies available to him by failing to petition the state court for a writ of error *coram nobis*). Although Petitioner clearly pursued claims via an Application for Writ of Error *Coram Nobis* filed in the Circuit Court, it is undisputed that Petitioner failed to appeal the Circuit Court's denial of her Application for Writ of Error *Coram Nobis* to the SCAWV. Specifically, Petitioner pursued Grounds 2(A) and 2(C) in her Application for Writ of Error *Coram Nobis* as filed in the Circuit Court, but she did not assert Ground 2(B). She further failed to pursue any of these claims before the SCAWV in an appeal of the Circuit Court's denial of her Application for Writ of Error *Coram Nobis*. See Hutton, 239 W.Va. at 857, 806 S.E.2d at 781(setting forth the standard for review concerning a circuit court's order denying *coram nobis* relief); also see State v. Bays, 2022 WL 1694067 (W.Va. May 26, 2022)(same); State v. Vaughn, 2021 WL 5028955 (W.Va. Oct. 29, 2021)(same); Knotts v. State, 2020 WL 2911855 (W.Va. June 3, 2020)(same). Petitioner was clearly aware of all three claims of ineffective assistance of counsel as such were initially asserted in her *pro se* Amended Section 2254 Petition filed on March 6, 2020[9] (Document No. 37). Unlike the petitioner referenced in Slack, the undersigned finds that Petitioner is not an "unwary pro se prisoner" when it comes to the exhaustion process. As explained in the "Procedural History" section above, Petitioner has initiated two Section 2254 proceedings in this Court and has been thoroughly informed of the exhaustion requirement in both proceedings. (Civil Action No. 5:17-03111, Document No. 38; Civil Action No. 5:19-00196, Document Nos. 27 and 51.) As recent as October 2020, this Court thoroughly explained the exhaustion requirement and stayed the above action so that Petitioner

---

[9] Petitioner's Application for Writ of Error *Coram Nobis* was filed in the Circuit Court on January 8, 2021.

could return to State court to fully exhaust her State court remedies via *coram nobis* proceedings. (Civil Action No. 5:19-00196, Document No. 51.) Once Petitioner notified this Court that she had fully exhausted her State court remedies, the above action was placed back on the active docket and Petitioner was allowed to file a Final Amended Petition. As stated above, it is undisputed that Petitioner's Final Amended Petition is a mixed petition containing both exhausted (Ground 1) and unexhausted (Ground 2(A), (B), and (C)) claims. As explained in Slack, "[o]nce the petitioner is made aware of the exhaustion requirement, no reason exists for him not to exhaust all potential claims before returning to federal court." Slack, 529 U.S. at 489, 120 S.Ct. at 1606. Furthermore, Petitioner's *pro se* status or unfamiliarity of the law does not excuse her failure to exhaust. See Holloway v. Smith, 81 F.3d 149 (4th Cir. 1996)(citing Miller v. Bordenkircher, 764 F.2d 245, 251-52 (4th Cir. 1985)("[U]nfamiliarity with the law and his *pro se* status do not constitute adequate justification to excuse his failure to present the claim earlier."); Jones v. Armstrong, 367 Fed.Appx. 256, 258 (2nd Cir. 2010)("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir.), cert. denied, 531 U.S. 1035, 121 S.Ct. 622, 148 L.Ed.2d 532 (2000)(finding that the one-year statute of limitation is not tolled where petitioner is *pro se* and claims that the prison's law library inadequacies prevented him from learning of the limitation period.); Saahir v. Collins, 9956 F.2d 115, 118-19 (5th Cir. 1992)(finding that neither a petitioner's *pro se* status nor ignorance of the law constitutes "cause"); Stanley v. Lockhart, 941 F.2d 707, 710 (8th Cir. 1991)(Petitioner's lack of knowledge does not constitute sufficient cause to overcome the default); McDonald v. James, 2024 WL 1327315, * 4 (D.S.C. March 28, 2024)(finding that a petitioner's *pro se* status or ignorance of law and procedural requirements,

does not establish cause to excuse procedural default); <u>Garvin v. Cohen</u>, 2023 WL 5753680, * 15 (D.S.C. March 7, 2023)(rejecting petitioner's argument that a "low level of competence" should serve as cause to excuse his failure to exhaust); <u>Robinson v. Warden</u>, 2017 WL 4990542, * 3 (D.S.C. Sept. 21, 2017)("Petitioner's asserted lack of knowledge of the availability of other appeals does not excuse his failure to exhaust his court remedies."); <u>Stoudemire v. South Carolina Dept. of Corrections</u>, 2009 WL 2207819, * 4 (D.S.C. July 23, 2009)(finding petitioner failed to show any cause or prejudice that would excuse his failure to exhaust because ignorance of the law is insufficient); <u>Carter v. Warden</u>, 2009 WL 1393447, * 4 (D.S.C. May 18, 2009)("the petitioner's *pro se* status and his ignorance of the law do not constitute cause sufficient to excuse his default"); <u>Wilson v. Humphrey</u>, 2006 WL 643154, * 3 (S.D.W.Va. March 10, 2006)("Neither lack of legal training, nor knowledge of legal procedures constitutes cause to excuse Petitioner's failure to exhaust her state remedies."); <u>Lovings v. Warden-Rosp</u>, 2012 WL 525482, * 3 (W.D.Va. Feb. 14, 2012)(citation omitted)("[Petitioner's inability to research the laws and rules governing § 2254 petitions is not a valid excuse to stay this action. Permitting incarcerated, *pro se* habeas petitioners to stay unexhausted § 2254 petitions because they do not know the law would cause the de facto abandonment of the exhaustion requirement. Even *pro se* parties must 'stop, think and investigate more carefully before serving and filing papers.'") Additionally, this Court appointed counsel for Petitioner on March 9, 2020, for purposes of her federal proceedings. To the extent Petitioner needed advice concerning exhaustion of her State remedies for purposes of her Section 2254 proceedings, Petitioner clearly could have consulted with appointed counsel. Thus, Petitioner should not be excused from the exhaustion requirement because she has failed to establish "there is an absence of available State corrective process" or

46

"circumstances exist that render such process ineffective to protect the rights of the applicant." The undersigned, therefore, respectfully recommends that the District Court find that Petitioner is not excused from exhausting her claims in State court and grant Respondent's Motion to Dismiss as to Petitioner's unexhausted claims (Ground 2 (A), (B), and (C)).

As an alternative argument, Petitioner appears to request the Court to consider her unexhausted claims as abandoned and consider the merits of her exhausted claim. Accordingly, the undersigned will consider the merits of Ground 1 of Petitioner's Final Amended Petition.

**2.    Constitutionality of W. Va. Code § 61-2-13:**

In her Final Amended Petition, Petitioner argues that "the statute under which [she] was convicted, W. Va. Code § 61-2-13, is unconstitutional because it does not require the State to prove that the defendant acted with any specific element of intent to secure a conviction." (Civil Action No. 5:19-00196, Document No. 61.) Citing Rehaif v. United States, 588 U.S. 225, 139 S.Ct. 2191, 204 L.Ed.2d 594 (2019), Petitioner argues that the "Supreme Court has repeatedly emphasized the importance of criminal statutes containing *mens rea* or intent requirements." (Id., Document No. 62, p. 12.) Petitioner claims that W. Va. Code § 61-2-13 fails to "suggest an improper intent that is required for liability to attach" nor does it "separate wrongful behavior from 'an innocent mistake.'" (Id., pp. 12 – 13.) Petitioner asserts that contrary to the SCAWV's "holding there is nothing in the plain language of § 61-2-13(a) that suggests an improper intent is required for liability to attach." (Id., p. 13.) Petitioner states that "[i]n the words of *Rehaif*, there is nothing to separate wrongful behavior from 'an innocent mistake.'" (Id.) Petitioner contends that the SCAWV "puts too much weight on the word 'extort' for the simple reason that the word does not appear in the statute itself." (Id.) Petitioner explains that the word "extort" appears

"only in the title, but 'the title of a statute and the heading of a section cannot limit the plain meaning of the text." (Id., pp. 13 – 14.) Petitioner further asserts that "to the extent a general meaning of 'extortion' could save the statute facially it could not do so as applied in [Petitioner's] case because the instructions given the jury, while using the work 'extort' never defined its meaning beyond the statutory text of § 61-2-13(a)." (Id., p. 14.) Petitioner claims that the "lack of *mens rea* requirement is further problematic because the particular version of the offense with which [Petitioner] was charged – extortion via accusation of a crime – requires no bad faith or falsity on the part of the defendant." (Id.) Petitioner asserts that "there is no doubt that Griffin is guilty of precisely what [Petitioner] accused him of doing." (Id., p. 15.) Petitioner explains that "[w]ithout a *mens rea* element the jury was left deciding [Petitioner's] guilt based on a scenario where she engaged in a regular, lawful demand (to transfer property) based on a truthful allegation of criminal conduct." (Id.) Petitioner asserts that "the Supreme Court requires more to aid the jury in distinguishing between innocent and criminal conduct." (Id.) Petitioner concludes that her conviction must be vacated because W. Va. Code § 61-2-13 does not have an explicit *mens rea* element. (Id.)

In his Motion, Respondent argues that "West Virginia's Extortion statute, West Virginia Code § 61-2-13 is constitutionally sound." (Id., Document No. 67 and Document No. 68, pp. 11 – 14.) Respondent contends that the SCAWV "properly found that the statute is not overly broad as it requires that threats be made for a specific purpose." (Id., Document No. 68, pp. 11 – 12.) Respondent states that the SCAWV determined that the "statute was not overbroad, as it requires that the threats are made for a purpose: to 'extort money, pecuniary benefit, or any bond, note or other evidence of debt.'" (Id., p. 13.) The SCAWV further found that it had previously held that

48

extortion is "malum in se." (Id.) Respondent, however, notes that "[w]hen a statute is silent as to *mens rea*, the court reads into the statute the *mens rea* 'necessary to separate wrongful conduct from 'otherwise innocent conduct." (Id., p. 12.) Respondent contends that the SCAWV's decision was neither contrary to nor involved an unreasonable application of federal law." (Id.) Respondent notes that "this is 'a general intent requirement'. . . ." (Id., p. 12.) As to Petitioner's Rehaif argument, Respondent asserts that Rehaif "was a decision of statutory interpretation, not constitutional law." (Id., p. 13.) Respondent, therefore, argues that "West Virginia courts are not confined to its limited holding regarding firearms offenses and *Rehaif* is not applicable here." (Id.) Respondent concludes that Petitioner's conduct was for the specific purpose of obtaining property in exchange for Petitioner's silence of criminal activity. (Id., pp. 13 – 14.) Respondent argues that it is irrelevant whether the victim was guilty regarding the crimes against Petitioner's child.[10] (Id.) Respondent asserts that "Petitioner knew her conduct of extorting Griffin into giving her property was wrong in itself." (Id., p. 14.) Specifically, Respondent states that "[t]he fact that Petitioner threatened to tell law enforcement of Griffin's conduct to get what she wanted – property ownership – demonstrates she was aware of the wrongfulness of her actions." (Id.) Respondent contends Petitioner clearly exhibited the required *mens rea* to support her conviction. (Id.) Respondent, therefore, concludes that Respondent is entitled to judgment as a matter of law because Petitioner has not demonstrated that the SCAWV's decision is contrary to, or constitutes an unreasonable applicable of clearly established federal law. (Id.)

In Response, Petitioner continues to argue that the SCAWV's decision "was fundamentally flawed and amounts to an incorrect application of federal constitutional law." (Id.,

---

[10] Petitioner allegedly found Griffin viewing pornographic material with her eight-year-old daughter. Petitioner allegedly threatened to report Griffin to law enforcement unless Griffin signed a deed giving his farm property to Petitioner. (Civil Action No. 5:19-00196, Document No. 45-1.)

Document No. 69, pp. 6 – 8.) Petitioner asserts "[c]ontrary to the [SCAWV]'s holding there is nothing in the plain language of § 61-2-13(a) that suggest an improper intent is required for liability to attach." (Id., p. 6.) Citing <u>Rehaif</u>, Petitioner claims "there is nothing to separate wrongful behavior from 'an innocent mistake.'" (Id.) Petitioner contends that the SCAWV "puts too much weight on the word 'extort' for the simple reasons that the word does not appear in the statute itself." (Id.) Petitioner explains that such appears only in the title and "the title of a statute and the heading of a section cannot limit the plain meaning of the text." (Id.) Petitioner asserts that "to the extent a general meaning of 'extortion' could save the statute facially it could not do so as applied to [Petitioner's] case because the instructions given the jury, while using the word 'extort' never defined its meaning beyond the statutory text of § 61-2-13(a)." (Id., p. 7.) Petitioner argues "there is nothing illegal about one person demanding money from another, even if the other person has wronged them in some way." (Id.) Petitioner further contends that the "lack of *mens rea* requirement is further problematic because the particular version of the offense with which [Petitioner] was charged – extortion via accusation of a crime – requires no bad faith or falsity on the part of the defendant." (Id.) Petitioner claims "there is no doubt that Griffin is guilty of precisely what [Petitioner] accused him of doing – he admitted it during his testimony at trial." (Id., pp. 7 – 8.) Petitioner concludes that "[w]ithout a *mens rea* element the jury was left deciding [Petitioner's] guilt based on a scenario where she engaged in a regular, lawful demand (to transfer property) based on a truthful allegation of criminal conduct." (Id., p. 8.) Petitioner asserts that the "Supreme Court requires more to aid the jury in distinguishing between innocent and criminal conduct." (Id.) Petitioner, therefore, argues that her conviction must be vacated because "§ 61-2-13 does not have an explicit *mens rea* element and the jury was not instructed

on one." (Id.)

In Reply, Respondent argues that "Petitioner has not demonstrated that her Section 61-2-13 claim rises to [the] level of error warranting habeas relief." (Id., Document No. 70, pp. 5 – 6.) Respondent asserts that "Petitioner essentially expresses her disagreement with the SCAWV's decision without showing how the decision is contrary to Supreme Court precedent." (Id., p. 6.) Respondent contends that Petitioner's reliance upon Rehaif is unavailing because "Rehaif did not announce a constitutional rule and is not controlling on the SCAWV nor applicable here." (Id.) Respondent explains that the SCAWV determined that "the intent element of Section 61-2-13 requires that threats be made for a purpose: to 'extort money, pecuniary benefit, or any bond, note or other evidence of debt." (Id.) Respondent notes that Petitioner threatened Griffin that she would report his sexual conduct with her daughter to law enforcement unless he gave her real property. (Id.) Respondent asserts that "Petitioner's threat proves that she was aware of the wrongfulness of her actions and, thus, she exhibited the requisite *mens rea* to support her conviction of extortion." (Id.)

In Petitioner's direct appeal, the SCAWV addressed the issue, in pertinent part, as follows:

> We have previously stressed the importance of our separation of powers doctrine, and the great deference to which the legislature is entitled in the interpretation and construction of a statute.
> In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the

51

> constitutionality of an act of the legislature, the negation of
> legislative power must appear beyond reasonable doubt.

Syl. Pt. 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965). Further, "[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970). Based on the plain words of the statute and the applicable case law governing the interpretation and construction of this statute, this Court finds that the statute is not overbroad, as it requires that the threats are made for a purpose: to "extort money, pecuniary benefit, or any bond, note or other evidence of debt." See W.Va. Code § 61-2-13. In addition, extortion is malum in se. *See generally Committee on Legal Ethics of the West Virginia State Bar v. Printz*, 187 W. Va. 182, 416 S.Ed.2d 720 (1992).

(<u>Id.</u>, Document No. 45-1, pp. 3 – 4.)

"[C]riminal law seeks to punish the 'vicious will.'" <u>Ruan v. United States</u>, 597 U.S. 450, 457, 142 S.Ct. 2370, 2376, 213 L.Ed.2d 706 (2022)(citing <u>Morissette v. United States</u>, 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed.288 (1952)). "Whether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent." <u>Rehaif v. United States</u>, 588 U.S. 225, 228-29, 139 S.Ct. 2191, 2195, 204 L.Ed.2d 594 (2019)(citing <u>Staples v. United States</u>, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)). When determining legislative intent, there is a "heavy presumption that Congress does not intend to impose criminal liability without some showing of *mens rea*." <u>United States v. Forbes</u>, 64 F.3d 928, 931 (4ᵗʰ Cir. 1995); <u>also see</u> <u>Rehaif</u>, 588 U.S. at 229, 139 S.Ct. at 2195("we start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct'")(citation omitted). Specifically, the Supreme Court has explained as follows:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent

ability and duty of the normal individual to choose between good and evil.

Morissette, 342 U.S. at 250, 72 S.Ct. at 243. As "long as the statute does not expressly dispense of a scienter requirement – courts should construe statutes to include one so as to avoid these 'serious' constitutional questions." Forbes, 64 F.3d at 932(citing United States v. X-Citement Video, Inc., 513 U.S. 64, 72, 115 S.Ct. 464, 472, 130 L.Ed.2d 372 (1994)). The Supreme Court has noted that the mere omission of a *mens rea* element in a statute does not mean that Congress did not intend to include one because the concept of *mens rea* is so "firmly embedded" in "the background rules of the common law" that is not surprising that Congress might inadvertently omit it. Id.(citing Staples, 511 U.S. at 605, 114 S.Ct. at 1797). It was noted that courts should imply a *mens rea* element applicable to "each of the statutory elements." Id.; also see Rehaif, 588 U.S. at 229, 139 S.Ct. at 2195("We apply the presumption in favor of scienter even when Congress does not specify any scienter in the statutory text")(citation omitted); Elonis v. United States, 575 U.S. 723, 734, 135 S.Ct. 2001, 192 L.Ed.2d 1 (2015)(When a criminal statute is silent on the required mental state, courts should read such as requiring *mens rea* "necessary to separate wrongful conduct from 'otherwise innocent conduct.'") The Supreme Court has stated that "the *mens rea* we have read into such statutes is often that of knowledge or intent." Ruan, 597 U.S. at 458, 142 S.Ct. at 2377 (citing Staples, 511 U.S. at 619, 114 S.Ct. at 1804). "[W]hen a statute is not silent as to *mens rea* but instead 'includes a general scienter provision,' 'the presumption applies with equal or greater force' to the scope of that provision." Id.(citing Rehaif, 588 U.S. at 229, 139 S.Ct. at 2195).

Applying the above standard to W. Va. Code § 61-2-13, the undersigned cannot find that the SCAWV's decision is contrary to or constitutes an unreasonable application of clearly

established federal law. Although Petitioner places great weight upon Rehaif, Rehaif was a decision of statutory interruption – not constitutional law. See Rehaif, 588 U.S. at 229, 139 S.Ct. at 2195(The United States Supreme Court considered whether under 18 U.S.C. § 922(g), the government must prove that an individual knew both that he engaged in the prohibited conduct of possessing a firearm and had obtained the relevant status which made his possession of the firearm illegal.); also see In re McNeill, 68 F.4th 195, 2023 (4th Cir. 2023)(finding that "*Rehaif* did not announce a constitutional rule" for purposes of filing a successive Section 2255 Motion); Khamishi-El v. United States, 800 Fed.Appx. 344, 349 (6th Cir. 2020)("[T]he rule stated in *Rehaif* is a matter of statutory interpretation, not a 'new rule of constitutional law.'"); Suarez v. Maruka, 2023 WL 3881106, * 4 (S.D.W.Va. April 17, 2023)(*Rehaif* is a decision of statutory interpretation, not constitutional law). Further, Rehaif did not depart from prior precedent concerning the standard for interrupting a criminal statute that omits the *mens rea* element. Rehaif, 588 U.S. at 229, 139 S.Ct. at 2195("Here we can find no convincing reason to depart from the ordinary presumption in favor of scienter.") Thus, the undersigned considers the language of W. Va. Code § 61-2-13. West Virginia Code § 61-2-13 states, in pertinent part, as follows:

> If any person threaten injury to the character, person, or property of another person, or the character, person or property of his wife or child, or to accuse him or them of any offense, and thereby *extort[s]* money, pecuniary benefit, or any bond, note or other evidence of debt, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than five years.

Va. Code § 61-2-13(emphasis added).[11] Finding the above statute unambiguous and applying its plain meaning, the SCAWV determined "that the statute was not overbroad, as it requires that

---

[11] Petitioner's counsel argues that the statute did not contain the word "extort" in the text of the statue. A review of the statute in effect at the time Petitioner's conviction reveals the contrary. Petitioner's counsel appears to be

the threats are made for a purpose: to 'extort money, pecuniary benefit, or any bond, note or other evidence of debt." Although W. Va. Code § 61-2-13 is silent as to a *mens rea* element, the Court can read *mens rea* such as knowledge or intent into the statute. Thus, the above statute clearly criminalizes the use of threats with the intent to "extort money, pecuniary benefit, or any bond, note or other evidence of debt." The use of extort supports the conclusion that the legislature intended to criminalize only wrongful threats. Although the statute does not define extort, the term's plain meaning illuminates its significance. As the SCAWV noted, it had previously held that extortion is "malum in se." (Civil Action No. 5:19-00196, Document No. 45-1, pp. 3 – 4.); See Erickson v. Erickson, 849 F.Supp. 453, 458 (S.D.W.Va. April 14, 1994)(citation omitted)("An act *malum in se* has been defined as, '[a] wrong in itself; an act or case involving illegality from the very nature of the transaction, upon principles of natural, moral, and public law.'"); Crum v. Appalachian Electric Power Co., 29 F.Supp. 90, * 92 (S.D.W.Va. Sept. 9, 1939)("*[M]alum in se* has been defined to mean a fraud or voluntary wrong.") Black's Law Dictionary defines "extort" as "[t]o gain by wrongful methods, to obtain in an unlawful manner . . . ." Furthermore, "extortion, like robbery or murder, refers to criminal conduct that has a commonly understood meaning providing ample notice of the conduct failing within its ambit, limiting the potential for abuse in enforcement, and ensuring that protected First Amendment speech is not within its reach." United States v. Cross, 677 F.3d 278, 289 (6th Cir. 2012). Extortionate threats are not protected by the First Amendment, thus, the extortion statute does not impinge on Petitioner's First Amendment freedoms. Nali v. Phillips, 2014 WL 5307584 (E.D.Mich. Oct. 16, 2014). Therefore, the undersigned finds that Petitioner's above claim is without merit because there is no evidence that the SCAWV's determination was contrary to, or

---

referring to the version of the statute enacted on June 2, 2018.

55

an unreasonable application of, clearly established federal law. Accordingly, the undersigned respectfully recommends that the District Court deny Ground One of Petitioner's Final Amended Petition and grant Respondent's Motion for Judgment on the Pleadings (Document No. 67).

Based upon the foregoing, the undersigned respectfully recommended that the District Court grant Respondent's "Motion to Dismiss and for Judgment on the Pleadings" (Document No. 67).

<u>**PROPOSAL AND RECOMMENDATION**</u>

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's "Motion to Dismiss and for Judgment on the Pleadings" (Document No. 67) and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Volk, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to send a copy of the same to counsel of record.

Dated: July 12, 2024.

Omar J. Aboulhosn
United States Magistrate Judge